UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

===============================================

CITIZENS AGAINST CASINO GAMBLING IN ERIE
COUNTY (JOEL ROSE and ROBERT HEFFERN, as
Co-Chairpersons), REV. G. STANFORD BRATTON, D. MIN.,
Executive Director of the Network of Religious Communities,
NETWORK OF RELIGIOUS COMMUNITIES, NATIONAL
COALITION AGAINST GAMBLING EXPANSION,
PRESERVATION COALITION OF ERIE COUNTY, INC.,
COALITION AGAINST GAMBLING IN NEW YORK—
ACTION, INC., THE CAMPAIGN FOR BUFFALO—
HISTORY ARCHITECTURE AND CULTURE,
ASSEMBLYMAN SAM HOYT, MARIA WHYTE, JOHN
MCKENDRY, SHELLEY MCKENDRY, DOMINIC J. CARBONE,
GEOFFREY D. BUTLER, ELIZABETH F. BARRETT,
JULIE CLEARY, ERIN C. DAVISON, ALICE E. PATTON,
MAUREEN C. SCHAEFFER, JOEL A. GIAMBRA, PASTOR
KEITH H. SCOTT, SR., DORA RICHARDSON, and
JOSEPHINE RUSH,

                              Plaintiffs,

v.                                                      **DECISION AND ORDER**
                                                        07-CV-0451S

PHILIP N. HOGEN, in his Official Capacity as Chairman
of the National Indian Gaming Commission, the
NATIONAL INDIAN GAMING COMMISSION, the
UNITED STATES DEPARTMENT OF THE INTERIOR,
and DIRK KEMPTHORNE, in his Official Capacity as
the Secretary of the Interior,

                              Defendants.

===============================================

# I.  INTRODUCTION

On July 8, 2008, the Court issued a Decision and Order on all motions pending in this case and entered a final judgment vacating the National Indian Gaming Commission's approval of the Seneca Nation of Indians' June 9, 2007 Class III Gaming Ordinance ("Ordinance").  Currently before the Court are two post-judgment motions.  Plaintiffs have filed a Motion for an Order Enforcing the Judgment (Docket No. 63) and Defendants have filed a Motion to Amen1d the Judgment to include a Remand to the Chairman of the National Indian Gaming Commission ("NIGC") (Docket No. 65).  As set forth fully below, Plaintiffs' Motion is granted in part and denied in part, and Defendants' motion is denied.

# II.  DISCUSSION

## A.    Plaintiffs' Motion to Enforce the Judgment

Plaintiffs ask that the Court enforce its July 8, 2008 Decision by directing Defendants, and in particular the Chairman of the NIGC, to order the permanent closure of the Seneca Nation of Indians' ("SNI") gambling casino located on a 9-1/2 acre site in downtown Buffalo, New York, referred to in the Decision as the "Buffalo Parcel."

### 1.    Background

Under the Indian Gaming Regulatory Act ("IGRA"), Class III gambling is lawful only when, among other requirements: (1) the tribe wishing to conduct gambling activities adopts a gaming ordinance that meets the IGRA's requirements; and (2) the ordinance is approved by the NIGC Chairman.  25 U.S.C. § 2710(d)(1).  The Court's July 8, 2008 Decision vacated the Chairman's approval of the SNI's Ordinance.   NIGC regulations state that the operation of a gaming facility "without a tribal ordinance or resolution that the Chairman has approved under part 522 or 523 of this chapter" is a "substantial violation" of the IGRA.  25 C.F.R. § 573.6 (emphasis supplied).

On the same day the Court issued its Decision, Plaintiffs' counsel wrote to the United States Attorney's Office requesting that it "immediately advise whether or not the Chairman of the NIGC intends to exercise his authority pursuant to 25 U.S.C. § 2713(b) to order immediate cessation of the current gaming operation conducted by the Seneca Nation of Indians at the Buffalo Parcel." Docket No. 63-3, Ex. B. Plaintiffs' counsel followed, on July 9, 2008, with a request that the U.S. Attorney's Office advise "no later than 5:00 p.m. Eastern Daylight Time on Thursday, July 10, 2008, with respect to whether or not the Chairman of the National Indian Gaming Commission will be taking the steps specified in my letter to you yesterday, and if so, when." *Id.*, Ex. C. Penny Coleman, Esq., counsel for the NIGC, apparently contacted Plaintiffs' counsel on the afternoon of Thursday, July 10, 2008, to advise that the NIGC was still considering its options and that there would be nothing further to report by 5:00 p.m. that day. *Id.*, Ex. D. Plaintiffs filed their motion seeking enforcement on Monday, July 14, 2008. The parties have not advised the Court of any further communications between them relative to this matter. Defendants do not indicate that they have taken any enforcement action.

In moving for relief, Plaintiffs point to the NIGC Chairman's authority under the IGRA to order the temporary closure of gaming activities. They urge that, in the face of the Court's ruling, the NIGC's refusal to issue an order directing the SNI to close its Buffalo casino frustrates the purpose of the Court Decision.

In opposition to Plaintiffs' motion, Defendants concede that the IGRA grants the Chairman authority to order the closure of gaming facilities. However, they contend that Congress vested the NIGC with absolute discretion relative to enforcement and "has not expressed an intent to circumscribe the discretion of the NIGC to decide *when or whether to pursue enforcement actions*." Docket No. 71 at 4 (emphasis supplied). According to

2

Defendants, because the IGRA provides no meaningful standard by which to evaluate the NIGC's exercise of its "prosecutorial discretion," a decision not to enforce is not subject to judicial review and the Court is without jurisdiction to compel the NIGC to act. *Id.* at 5-6.

Plaintiffs' motion requires the Court to first consider the IGRA's remedial scheme.

### 2.    The IGRA's Enforcement Provisions

Congress established the National Indian Gaming Commission when it enacted the IGRA. 25 U.S.C. § 2704(a). The Commission is comprised of three members: a Chairman appointed by the President with the advice and consent of the Senate, and two associate members appointed by the Secretary of the Interior. *Id.* § 2704(b). At least two Commission members must be enrolled members of any Indian tribe, and no more than two members can be of the same political party. *Id.* § 2704(b)(3).

Congress charged the NIGC and its Chairman with the enforcement of IGRA's provisions, and directed the NIGC to promulgate such regulations and guidelines as it deems appropriate to implement the Act. 25 U.S.C. §§ 2705, 2706. In short, Congress entrusted the NIGC with the important task of ensuring that operators of tribal gaming facilities comply with the law.

The IGRA's enforcement procedure is set forth in 25 U.S.C. § 2713. Generally speaking, the Chairman is authorized to level and collect civil fines for "any violation" of the IGRA or its regulations, *id.* § 2713(a)(1), and to order the temporary closure of a gaming facility for a "substantial violation" of the IGRA or its regulations, *id.* § 2713(b)(1). Enforcement is triggered by § 2713(a)(3), which provides, in pertinent part, that:

> *Whenever* the Commission has reason to believe that the tribal operator of an Indian game . . . is engaged in activities regulated by this chapter . . . that may result in the imposition of a fine under subsection (a)(1) of this section [or] the permanent closure of such game . . . the Commission *shall provide such tribal operator . . . with a written complaint* stating the acts or omissions which form the basis for such belief and the action or choice of action being

> considered by the Commission.  The allegation shall be set forth in common
> and concise language and must specify the statutory or regulatory provisions
> alleged to have been violated, but may not consist merely of allegations
> stated in statutory or regulatory language.

(emphasis supplied).  *See*  Amoco Prod. Co. v. Watson, 410 F.3d 722, 733 (D.C. Cir. 2005) (noting that under 25 U.S.C. § 2713(a)(3), administrative proceedings are initiated by issuance of a "complaint"); Sac & Fox Tribe of the Mississippi in Iowa v. United States, 264 F. Supp. 2d 830, 836-37) (N.D. Iowa 2003) ("complaint" must be issued before Chairman can assess fines or issue temporary closure order); Cheyenne-Arapaho Gaming Comm'n v. National Indian Gaming Comm'n, 214 F. Supp. 2d 1155, 1161 (N.D. Okla. 2002) (same).

The NIGC's regulations provide that the complaint, referred to in the regulations as a "notice of violation" ("NOV"), may also be issued by the Chairman alone.  25 U.S.C. § 2705(b); 25 C.F.R. § 573.3.   The NOV shall contain: (1) a citation to the federal requirement that has been or is being violated; (2) a description of the circumstances surrounding the violation, set forth in common and concise language; (3) measures required to correct the violation; (4) a reasonable time for correction, if immediate measures cannot be taken; and (5) notice of rights of appeal.  25 C.F.R. § 573.3.  If the Chairman concludes that a fine is appropriate, NIGC regulations anticipate that he will serve a proposed assessment within 30 days after the NOV is issued.  *Id.* § 575.5(b).  The Chairman may issue a temporary closure order contemporaneous with or subsequent to issuance of the NOV.  *Id.* § 573.6.  Alleged violators have the right to appeal to the Commission, *inter alia*, any violation alleged in a NOV, the assessment of a civil fine, or an order of temporary closure.  *Id.* § 577.1.

The parties' respective requests and arguments must be considered in light of this statutory scheme.  The Court first rejects Defendants' assertion that the NIGC has been

granted absolute discretion to "decide when or whether to pursue enforcement actions." Section 2713(a)(3) provides that the NIGC *shall* issue a complaint *whenever* it has reason to believe a tribal gaming facility is operating in violation of the IGRA.  This language is mandatory, it connotes immediacy, and it is entirely consistent with Congress's charge to the NIGC to safeguard the integrity of Indian gaming.  Congress directs the NIGC to act upon any indication of the existence of a violation; it does not give the Commission discretion to ignore violations or choose not to issue a complaint.

Congress did give the Chairman and the Commission discretion, within the IGRA's mandatory remedial framework, to determine what type of enforcement action is appropriate to the circumstances of a particular violation or substantial violation.  Thus, Plaintiffs' request that the Court give effect to its July 8, 2008 Decision by directing the Chairman to take a specific enforcement action is not in accord with the IGRA's remedial scheme.[1]

The question that remains is whether the All Writs Act, upon which Plaintiffs base their request, is applicable in light of the IGRA's enforcement provisions.

### 3.    The Applicability of the All Writs Act

The All Writs Act states, in pertinent part, that:

The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 1651(a).  Relying on United States v. New York Tel. Co., Plaintiffs contend that the Court has inherent power pursuant to the All Writs Act, to direct such action "as may

---

[1]  Plaintiffs request that the Court direct the Chairman to issue a permanent closure order.  The Court notes that the Chairman is not statutorily authorized to issue a permanent closure order.  The Chairman's authority extends only to the issuance of temporary orders, which can be made permanent only by a vote of not less than two members of the Commission, following a hearing.  25 U.S.C. § 2713(b)(2).  Plaintiffs' request for permanent closure is also overbroad in light of their acknowledgment that gaming can lawfully occur on the Buffalo Parcel if the Secretary makes a determination favorable to the SNI under 25 U.S.C. § 2719(b)(1)(A).  Docket No. 73 at 2.

be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained."  434 U.S. 159, 172, 98 S. Ct. 364, 54 L. Ed. 2d 376 (1977).

Since New York Tel., the Supreme Court has constrained the expansive reading it gave the All Writs Act in that decision.   Some eight years later, the Supreme Court explained that "[t]he All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute.  Where a statute specifically addresses the particular issue in hand, it is that authority, and not the All Writs Act, that is controlling."  Pennsylvania Bureau of Corr. v. United States Marshals Serv., 474 U.S. 34, 43, 106 S. Ct. 355, 88 L Ed. 2d 189 (1985).  Thus, in Penn. Bureau of Corr., the Supreme Court held that the All Writs Act did not vest the district court with authority to direct the U.S. Marshals Service to transport a prisoner from a state facility to federal court to testify in a civil rights proceeding because the habeas statute was controlling.  Id. at 38.  The habeas statute, 25 U.S.C. § 2243, provides that only the person having custody of a prisoner can be required to produce the prisoner for a court appearance.  Id. at 38-39.  In that case, the custodian was the Commonwealth of Pennsylvania.  The Supreme Court stated that the All Writs Act "does not authorize [federal courts] to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate."  Id. at 43.

Later decisions have established that the All Writs Act does not, by its terms, provide federal courts with an independent grant of jurisdiction.  Syngenta Crop Prot., Ind. v. Hurley, 537 U.S. 28,  123 S. Ct. 366, 154 L. Ed. 2d 368 (2002) (holding that All Writs Act did not provide jurisdictional basis to remove an action from state to federal court where the district court did not have original jurisdiction over the dispute).  "While the All Writs Act authorizes employment of extraordinary writs, it confines the authority to the issuance of

process 'in aid of' the issuing court's jurisdiction. . . . [It] does not enlarge that jurisdiction." Clinton v. Goldsmith, 526 U.S. 529, 535-35, 119 S. Ct. 1538, 143 L. Ed. 2d 720 (1999) (citation omitted) (Court of Appeals for the Armed Forces' order enjoining the President and various military officials from dropping respondent from the rolls of the Air Force was not "in aid of" that court's strictly circumscribed jurisdiction to review court-martial findings and sentences).

More recently, in Norton v. Southern Utah Wilderness Alliance, the Supreme Court noted that writs of mandamus under the All Writs Act are "normally limited to enforcement of a specific, unequivocal command, the ordering of a precise, definite act about which an official ha[s] no discretion whatsoever." 542 U.S. 55, 63, 124 S. Ct. 2373, 159 L. Ed. 2d 137 (2004) (internal citations, quotation marks and alterations omitted).

Applying the foregoing principles to this case, the Court finds as follows. The IGRA mandates that the NIGC take prompt action once it has reason to believe that a violation exists. The IGRA and NIGC's regulations state that operating a gaming facility absent the Chairman's approval of a gaming ordinance is unlawful and a substantial violation of the IGRA. The Court's July 8, 2008 Decision vacated the Chairman's approval of the SNI's Ordinance. Defendants do not dispute that the SNI has been operating a gaming facility on the Buffalo Parcel without an approved ordinance since July 8, 2008 .

The IGRA's mandate to the NIGC provides authority to issue a writ in aid of the Court's exercise of its jurisdiction in CACGEC II. There are no controlling statutory procedures governing the NIGC's failure to act in accordance with its statutory duty with which a writ will conflict. An order compelling the NICG and its Chairman to carry out their congressionally-mandated obligations in the face of the Court's July 8, 2008 Decision vacating the Chairman's Ordinance approval appears to be precisely the type of action

contemplated by the All Writs Act.

Accordingly, the Court directs the NIGC and its Chairman to comply forthwith with Congress's mandate as set forth in 25 U.S.C. § 2713(a)(3), and with NIGC regulations. Upon issuance of the notice(s) of violation, the Chairman is directed to take such action as is consistent with the Court's July 8, 2008 Decision, the IGRA's mandates and intent, and NIGC regulations.

## B.    Defendants' Motion to Remand

Defendants request that the Court alter or amend its Judgment, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, and remand the Chairman's approval of the SNI's Ordinance to the Chairman. They urge two bases for remand. First, they argue that the Court exceeded the permissible scope of review when it considered statutes and decisional authority not contained in the administrative record to determine a question of statutory interpretation relative to the "settlement of a land claim" exception in Section 20 of the IGRA.[2]  Next, Defendants contend that remand is appropriate in light of two "new" developments: (1) the Bureau of Indian Affairs' publication, on May 20, 2008, of regulations relative to Section 20 of the IGRA, which became effective on August 25, 2008; and (2) the SNI's submission of a new class III gaming ordinance to the NIGC on July 16, 2008.[3]

### 1.    The Standard for Rule 59 Motions

Alteration of a court's judgment pursuant to Rule 59(e) is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial

---

[2]  The Court notes that its July 8, 2008 Decision also contains a determination on another question of statutory interpretation—the meaning of "Indian lands." There, too, the Court considered statutes and decisional authority not contained in the administrative record. Defendants apparently do not believe the Court exceeded the permissible scope of review with respect to that aspect of the Decision, which was resolved in their favor.

[3]  Plaintiffs filed a passionate and lengthy response to Defendants' motion. Unfortunately, that well-written response, in large part, lacks relevant law directed to the arguments raised and authority advanced by Defendants. As such, it is of limited value on the precise questions before the Court.

resources." <u>USA Certified Merchants, LLC v. Koebel</u>, 273 F. Supp. 2d 501, 503 (S.D.N.Y. 2003) (citations omitted).  "A court is justified in reconsidering its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent obvious injustice." <u>Atlantic States Legal Found., Inc. v. Karg Bros., Inc.</u>, 841 F. Supp. 51, 53 (N.D.N.Y.1993) (quoting <u>Larsen v. Ortega</u>, 816 F. Supp. 97, 114 (D. Conn.1992)).

The standard for granting a Rule 59(e) motion is strict, and reconsideration is generally denied as Rule 59(e) "motions are not a vehicle for re-litigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite of the apple."  <u>Celeste v. East Meadow Union Free Sch. Dist.</u>, 2008 U.S. Dist. LEXIS 61099, at *3 (E.D.N.Y. Aug. 5, 2008) (internal quotation marks and citation omitted); *see also*, <u>Exxon Shipping Co. v. Baker</u>, ___ U.S. ___, 128 S. Ct. 2605, 2617 n.5, 171 L. Ed. 2d 570 (2008) (Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment" (citation omitted)).

A decision to grant or deny a Rule 59(e) motion is within the sound discretion of the court, and the motion should be granted only when the moving party can demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion and which, had they been considered, would have changed its decision. <u>Atlantic Cas. Ins. Co. v. Joney Const. Corp.</u>, 2008 U.S. Dist. LEXIS 54151, at *3-4 (E.D.N.Y. July 12, 2008) (citations omitted); *see also*, <u>North River Ins. Co. v. Philadelphia Reinsurance Corp.</u>, 63 F.3d 160, 165 (2nd Cir. 1995), *cert. denied*, 516 U.S. 1184, 116 S. Ct. 1289, 134 L. Ed. 2d 233 (1996) ("A court should be 'loath' to revisit an earlier decision in the absence of extraordinary circumstances such as where the initial decision was

'clearly erroneous and would work a manifest injustice.'" (citations omitted)).

**2.     The Court's Interpretation of the "Settlement of a Land Claim" Exception**

On July 2, 2007, the NIGC Chairman considered whether the Buffalo Parcel was acquired as part of the "settlement of a land claim" and answered that question in the affirmative.  Defendants now contend that the Court erred when it cited statutes and decisional authority not contained in the administrative record in finding that the Chairman's determination was arbitrary and capricious.  They urge that when deciding a question of law, the Court is limited to a review of the law relied on by the agency.  If the administrative record does not contain all of the law the Court believes is relevant, Defendants contend that the Court should not decide the matter, but should remand the case.  Before discussing Defendants' contentions, some background is warranted.

In early 2002, when the Secretary of the Interior was presented with the SNI's gaming compact with New York State, the Secretary considered whether land the SNI intended to purchase in the City of Buffalo with funds received under the Seneca Nation Settlement Act would be land acquired as part of the "settlement of a land claim."  The Secretary answered this question of statutory interpretation in the affirmative in an opinion letter.

In that same year, the NIGC Chairman was presented with, and approved, a gaming ordinance adopted by the SNI on November 16, 2002.  When the Chairman's final agency action was challenged in Citizens Against Casino Gambling in Erie County v. Kempthorne ("CACGEC I"), the Court found no evidence in the record that the NIGC had ever considered the questions of whether land to be purchased by the SNI in Buffalo would be "Indian lands" or would be gaming eligible under the "settlement of a land claim" exception contained in Section 20 of the IGRA.   471 F. Supp. 2d 295, 326 (W.D.N.Y. 2007),

*amended by* 2007 U.S. Dist. LEXIS 29561 (W.D.N.Y. Apr. 20, 2007).  The Court declined

to interpret the statutory language the CACGEC I plaintiffs had placed in dispute, reasoning

that the NIGC, which is charged with administering and interpreting the IGRA, should first

have an opportunity to address these questions.  *Id.* at 326-27.  The Court remanded the

matter to the NIGC on January 12, 2007, with instructions that the Chairman make the

necessary "Indian lands" and Section 20 determinations, and explain the bases for his

conclusions.  *Id.* at 327.

On remand, the Chairman considered the "Indian lands" question and "the

applicability of IGRA's 'settlement of a land claim' exception."  AR00009.[4]  On July 2, 2007,

he concluded that the Buffalo Parcel is "Indian lands" and that the "settlement of a land

claim" exception applies, making the Parcel eligible for Indian gaming.  AR00009-13.  The

Chairman's July 2, 2007 Ordinance approval was challenged  in Citizens Against Casino

Gambling in Erie County v. Hogen ("CACGEC II"), where the Court entered the judgment

Defendants now seek to amend.  2008 U.S. Dist. LEXIS 52395 (W.D.N.Y. July 8, 2008).

In moving for relief, Defendants fail to acknowledge that this same matter previously

was remanded to the NIGC for the express purpose of affording the Chairman the

opportunity to consider the at-issue statutory provisions in the first instance.  The Chairman

specifically addressed the "settlement of a land claim" question and provided an

explanation for his decision.  Now, in light of an adverse result, Defendants request a

fourth[5] administrative bite at the apple.  AR00013.  The authority on which Defendants rely

does not support their request.  That authority stands for the proposition that courts should

---

[4]  References to AR are to the NIGC's administrative record, Docket No. 27.

[5]  The Secretary of the Interior first addressed the "settlement of a land claim" question in her 2002 opinion letter.  The NIGC could have addressed the question in the Chairman's 2002 ordinance approval, but did not do so.  The Court remanded to provide the Chairman that opportunity in the first instance.  The Chairman did then undertake the question, largely deferring to the Secretary's earlier reasoning in support of his conclusion.

remand questions to an agency where the agency has not considered the question in the first instance. The cases do not mandate remand where the agency has decided the question and the reviewing court disagrees with its conclusion.

Defendants first cite to Immigration and Naturalization Serv. v. Ventura, 537 U.S. 12, 123 S. Ct. 353, 154 L. Ed. 2d 272 (2002), a case this Court relied on in CACGEC I to support its *sua sponte* decision to remand. In Ventura, an Immigration Judge considered and denied a Guatemalan's application for asylum. *Id.* at 14. In addition to finding that the applicant had failed to meet his burden of demonstrating that he faced persecution based on his perceived political opinion, the Immigration Judge concluded that conditions in Guatemala had changed enough to call into question any motivation for future persecution. *Id.* at 15. The Board of Immigration Appeals ("Board") affirmed on the ground that the applicant did not meet his burden of establishing that he had faced the threat of persecution, and then declined to address the question of changed conditions in Guatemala. *Id.*

On appeal, the Ninth Circuit rejected the Board's conclusion that the applicant had not met his initial burden of proof. *Id.* Both sides requested that the Circuit Court remand the case to the Board for its determination of the question of "changed conditions." *Id.* at 13. While the Ninth Circuit "recognized that the [Board] had not decided the 'changed circumstances' question and that 'generally' a court should remand to permit that consideration," it determined that there was no need for remand where it was clear the Court would reverse the Board's decision if the Board decided the matter against the applicant. *Id.* at 15.

The United States Supreme Court reversed the Ninth Circuit insofar as it denied remand to the Board on the "changed conditions" question. The Supreme Court held that

the Ninth Circuit had disregarded the agency's legally-mandated role and "independently created far-reaching legal precedent . . . without giving the [Board] the opportunity to address the matter in the first instance in light of its own expertise." *Id.* at 17. The Supreme Court did not disturb the Ninth Circuit's decision to reject the Board's determination on the question it did have an opportunity to consider—*i.e.*, whether the applicant had met his burden of establishing that he faced persecution.

Another case on which Defendants rely, Gonzales v. Thomas, also involved a Board of Immigration Appeal determination. 547 U.S. 183, 126 S. Ct. 1613, 164 L. Ed. 2d 358 (2006). There, the applicant family sought asylum on two grounds: (1) their race and political views, and (2) their membership in a particular social group. *Id.* at 184. The Immigration Judge and the Board both focused on the applicants' race and political views and rejected their claim. *Id.* On review, the Ninth Circuit noted that the Board had not considered the family's claim of persecution because of "membership in a particular social group." The Ninth Circuit then engaged in statutory interpretation in the first instance and concluded that the applicant family fell within the scope of that statutory term. *Id.* at 184-85. The Supreme Court vacated the Ninth Circuit's judgment and found that it erred in failing to remand to the Board a question it had not yet considered. *Id.* at 186.

The instant case is readily distinguished. Although no party requested a remand in CACGEC I, the Court remanded the issues raised in that complaint to the NIGC precisely so the NIGC could consider in the first instance the very questions raised again in CACGEC II. The NIGC squarely addressed the "settlement of a land claim" question on which Defendants now base their remand request.

Defendants confuse two distinct concepts: whether the agency has had an opportunity to consider the question presented in the first instance, and whether the

agency's determination on that question is found to be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(a).  The latter circumstance is the one that exists here and remand is not warranted.  Indeed, to require the NIGC to provide additional analysis or explanation in support of a determination that the Court has concluded is arbitrary, capricious and contrary to a century's worth of settled law and agency policy[6] would be the height of futility.

The Court also rejects Defendants suggestion that, when reviewing an agency's determination on a question of law, the court is unable to consider relevant statutes and decisional authority not contained in the administrative record.  This argument is nonsensical and finds no support in Defendants' cited cases.

Accordingly, the Court declines to remand this matter to the NIGC on the ground that the NIGC's "settlement of a land claim" analysis did not acknowledge relevant, well-settled law.

### 3. "New" Legal Developments

Defendants state that they now would like to inform the Court of a development that emerged during the pendency of <u>CACGEC II</u>, but which they chose not to disclose to the Court while the action was pending.  Specifically, the Bureau of Indian Affairs ("BIA") published a final rule on May 20, 2008, with an effective date of August 25, 2008, which "articulates standards that the BIA will follow in interpreting the various exceptions to the gaming prohibitions contained in section 2719 of IGRA."  73 Fed. Reg. 29354 (May 20,

---

[6] Defendants do not acknowledge the Court's finding that, in addition to being arbitrary and capricious,  the NIGC Chairman's determination on the settlement of a land claim question is contrary to law:

> [B]oth the NIGC's determination and the Secretary's opinion are at odds with the text of four successive congressional acts . . . , a significant body of decisional authority relative to those four acts, and the DOI's own stated [positions]. In other words, they are contrary to more than a century of law and agency action.

<u>CACGEC II</u>, 2008 U.S. Dist. LEXIS 52395, at *205.

2008).

Defendants have made no attempt whatsoever to explain or justify their failure to bring their own rulemaking, which they now claim is highly relevant, to the Court's attention during the pendency of <u>CACGEC II</u>. The Department of the Interior ("DOI") certainly cannot claim to have been unaware of its own Bureau's publication, and Defendants clearly were in the best position to timely bring this "new" development to light.[7]  Defendants' absolute silence in this regard appears to suggest a belief that the onus was on the Court to scour the Federal Register on a daily basis to discern whether the DOI, the BIA, the NIGC, or any other federal agency had taken any administrative action that might impact this case.  An alternative explanation, of course, is that Defendants simply made what they believed was a sound strategic decision not to disclose this development.

Whatever their reasons, Defendants' approach is particularly egregious in light of the history here.  A proposed rule relative to section 2719 of the IGRA was first published in 2000.  65 Fed. Reg. 55471 (Sept. 14, 2000).  Following a comment period, the proposed rule lay dormant for several years.  On October 5, 2006, the BIA published an amended proposed rule and set a deadline for the receipt of comments.  71 Fed. Reg. 58769.  The deadline was twice extended and finally expired on February 1, 2007.  72 Fed. Reg. 1954 (Jan. 17, 2007).  The DOI, through the BIA, then presumably commenced work on a final rule.  Some five months after the comment period closed, on July 2, 2007, the NIGC issued its Ordinance approval and section 2719 analysis.

In <u>CACGEC II</u>, Plaintiffs sought to rely on language in the BIA's 2006 proposed rule to challenge the NIGC's "settlement of a land claim" analysis.  Docket Nos. 35 at 23 and

---

[7]  The NIGC is deafeningly silent as to its knowledge of the BIA publication.  However, in light of the relationship between the DOI, the BIA, and the NIGC, generally and in this case, it is difficult to imagine that the NIGC was not also aware of the BIA's progress on and publication of a final rule.

34-2 at 47.  In response, Defendants reconfirmed the NIGC's position, and argued against the proposed rule's applicability.  Specifically, Defendants urged that the proposed rule was irrelevant and did not have the force of law because it was not codified, and that it "represent[ed] neither the Department's nor the NIGC's current interpretation of the Section 20 'settlement of a land claim exception.'"  Docket Nos. 28-2 at 30 and 45 at 25.  They gave no indication that publication of a final rule was imminent.

The BIA published its final rule on May 20, 2008, while the motions in CACGEC II remained pending.  73 FR 29354.  Although the proposed rule had been a subject of dispute between the parties and Defendants now urge the final rule's relevance, Defendants failed to notify the Court that a final rule was published.  Likewise, Defendants gave no indication that they wished to reconsider legal positions previously advanced or ignored in light of the final rule.  On June 26, 2008, *more than one month after publication of the final rule*, the Court advised the parties that it would issue its Decision no later than July 8, 2008.  Again, Defendants declined to inform the Court of, or take any action premised upon, the BIA's publication.

Defendants now contend that remand is appropriate so that the NIGC can apply both the DOI's changed "interpretation of the applicability of Section 2719 of IGRA to restricted fee Indian lands" and its "new legal interpretation of the settlement of a land claim exception" to the SNI's June 9, 2007 Ordinance.  Docket No. 65 at 7-8.  According to Defendants, a remand "will allow the NIGC to review its decision and determine in the first instance whether to alter that decision."  *Id.* at 7.  The obvious problem with this rationale is that Defendants had the opportunity throughout the pendency of CACGEC II, and certainly no later than May 20, 2008, to file supplemental legal memoranda on this very issue and/or to seek a stay of court proceedings to consider whether to revise their

legal theories or take further agency action.   Defendants apparently chose to stay the course and then alter their legal positions only if faced with an adverse outcome.

Defendants cite a number of cases they claim support their request for remand.  All are distinguishable from the circumstances here.  First, none of the cited cases involve a request for the extraordinary remedy of Rule 59(e) relief.  In two of the cases, the legal development on which remand was premised arose *after* judgment was entered by the courts below—*i.e.*, it truly was an intervening change.  Lawrence v. Chater, 516 U.S. 163, 116 S. Ct. 604, 133 L. Ed. 2d 545 (1996) (Supreme Court granted agency's request to remand case to Fourth Circuit where agency reinterpreted statute in a manner that might benefit claimant *after* the Circuit Court entered judgment against her); Department of the Interior v. South Dakota, 519 U.S. 919, 117 S. Ct. 286, 136 L. Ed. 2d 205 (1996) (Supreme Court remanded case based on DOI's promulgation of new regulation *after* Eight Circuit ruled against it).[8]  In the third case, SKF USA Ind. v. United States, an agency altered its position and sought a remand *while the case was still pending*, an option Defendants in this case also had, but did not avail themselves of.  254 F.3d 1022 (Fed. Cir. 2001).  The lower court denied the request.  The Federal Circuit concluded that the agency's remand request should have been granted, noting there was no indication the agency acted in bad faith and it had brought the matter to the attention of the lower court prior to judgment.  *Id.* at 1030.

The circumstances here are quite different and must be assessed in accordance

---

[8]  Justice Scalia issued dissents in both of the remand cases cited by Defendants.  In DOI v. South Dakota, he stated as follows:

> [W]e have never before GVR'd [granted certiorari, vacated and remanded] simply because the Government, having *lost* below, wishes to try out a new legal position.  The unfairness of such a practice to the litigant who prevailed in the Court of Appeals is obvious.  ("Heads I win big," says the Government; "tails we come back down and litigate again on the basis of a more moderate Government theory.")  Today's decision encourages the Government to do what it did here: "go for broke" in the [court below], rather than get the law right the first time.

519 U.S. at 921 (emphasis in original, alterations added).

with Rule 59(e) standards.  Here, Defendants had more than sufficient opportunity to alert the Court to the final rule and request appropriate relief during the pendency of <u>CACGEC</u> <u>II</u>.  The failure to do so, without explanation, does not warrant post-judgment relief.  *See,* *e.g.*, <u>Daley v. Commissioner of Soc. Sec.</u>, 2008 U.S. Dist. LEXIS 34257 (N.D.N.Y. Apr. 24, 2008) (denying Rule 59(e) motion where Commissioner brought existing administrative publications to court's attention after judgment was entered); <u>Cordero v. Astrue</u>, 2008 U.S. Dist. LEXIS 52711 (S.D.N.Y. July 7, 2008) (denying Rule 59(e) motion based on the advancement of legal theories not previously raised before the court); <u>Pan Building, Inc.</u> <u>v. Philadelphia Hous. Auth.</u>, 1989 U.S. Dist. LEXIS 7421 (E.D. Pa. 1989) (Rule 59 motion denied where counsel sought new trial based on evidence discovered at least two weeks before court issued its decision, but which counsel failed to disclose until after receiving adverse result); <u>Currie v. Baxter, Brown & Co., Inc.</u>, 145 F.R.D. 66 (S.D. Miss. 1992) (denying Rule 59(e) motion to alter or amend judgment where plaintiff had opportunity to bring relevant precedent to attention of the court, but failed to do so).

Defendants also suggest that a remand will conserve the resources of the parties and the Court.  The Court does not agree.  Had Defendants requested a stay or remand during the pendency of <u>CACGEC II</u>, that argument may have carried some appeal. Waiting until <u>CACGEC II</u> was decided, however, ensured the maximum expenditure of party and Court resources in the case.  To the extent that Defendants are speaking of future resources, the Court is inclined to believe that regardless of whether the NIGC reconsiders the SNI's June 9, 2007 ordinance on remand or takes action on the SNI's new class III gaming ordinance, filed on July 16, 2008, the possibility that the Court will have to consider these issues again is precisely the same.

Nor can the Court conclude that denying remand will result in manifest injustice to

Defendants.  As Defendants note, the SNI already has filed another amended ordinance with the NIGC which the Chairman will have the opportunity to act upon if he so chooses.

Finally, the Court is concerned that the relief Defendants request may be contrary to the "new" rule, which provides that "[t]hese regulations do not *alter* final agency decisions made pursuant to 25 U.S.C. 2719 before the date of enactment of these regulations." 25 C.F.R. § 292.26(a) (emphasis supplied).  It appears that the BIA sought to grandfather in and prevent the subsequent alteration of all final agency actions by the NICG on section 2719 taken prior to August 25, 2008.  The Court declines to remand with a direction to the NIGC to violate the BIA's new rule.

For all of the reasons stated, the Court, in its discretion, denies Defendants' request for a remand based on the BIA's "new" final rule.

## III.  CONCLUSION

For the reasons stated above, Plaintiffs' request that the Court enforce its Decision and Order in CACGEC II is granted to the extent that the NIGC and its Chairman are directed to forthwith carry out their congressionally-mandated enforcement duties under the IGRA.  The motion is denied to the extent that Plaintiffs request an order that would divest the NIGC of its discretion to determine the type of enforcement action to take.  The Defendants' motion to once again remand the questions presented in CACGEC I and II to the NIGC is denied.

## IV.  ORDERS

IT HEREBY IS ORDERED, that Plaintiffs' Motion to Enforce (Docket No. 63) is GRANTED in part, and DENIED in part, consistent with the foregoing Decision.

FURTHER, that Defendants' Motion to Remand (Docket No. 65) is DENIED.

FURTHER, that the NIGC and its Chairman are directed to comply forthwith with Congress's mandate as set forth in 25 U.S.C. § 2713(a)(3), and with NIGC regulations. Upon issuance of the notice(s) of violation, the Chairman is directed to take such action as is consistent with the Court's July 8, 2008 Decision, the IGRA's mandates and intent, and NIGC regulations.


      SO ORDERED.


Dated:  August 26, 2008
     Buffalo, New York                /s/William M. Skretny
                                     WILLIAM M. SKRETNY
                           United States District Judge